UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMIL STEFON CARTER,

                      Petitioner,

v.

THOMAS WINN,

                      Respondent.
_____/

Case No. 2:19-cv-11041

Paul D. Borman
United States District Judge

## OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS, (2) DENYING CERTIFICATE OF APPEALABILITY, AND (3) DENYING PERMISSION TO APPEAL IN FORMA PAUPERIS

Jamil Stefon Carter filed this habeas case under 28 U.S.C. § 2254. Petitioner pled guilty in the Wayne Circuit Court to second-degree murder, Mich. Comp. Laws § 750.317, and possession of a firearm during the commission of a felony, Mich. Comp. Laws § 750.227b. He was sentenced to 19-60 years for the murder and 5 years for the firearm offense.

The petition raises five claims: (1) Petitioner is actually innocent, (2) the prosecutor committed misconduct, (3) Petitioner was denied the effective assistance of trial counsel, (4) Petitioner was denied the effective assistance of appellate counsel, and (5) Petitioner's guilty plea was involuntary. Because all of the claims are without merit, the court denies the petition. The court also denies a certificate of appealability and denies leave to appeal in forma pauperis.

## I. Background

At Petitioner's preliminary examination, Lorenzo Pettus testified that on the evening of May 7, 2015, he visited Petitioner and Nicky Brim at Petitioner's residence in Detroit. The three drank a bottle of vodka. Brim was unusually quiet. After they finished the bottle, Pettus heard Brim make a comment to Petitioner about whether he was going to get his gun. Pettus started to leave. Brim pushed past him, and she hurried away from the house. When Brim was a few houses down the street, Pettus heard a shot and saw Brim hit the ground. Pettus looked back and saw Petitioner holding a rifle. Pettus ran toward Brim and yelled at Petitioner, "You hit her in the head. You shot her in the head, you stupid m[]-f[]er." (ECF No. 10-2, PgID 152.) Petitioner then fired a shot at Pettus but missed. Pettus saw Petitioner working at his rifle, which appeared to be jammed, and so he ran to an abandoned lot where he hid behind a tree.

Ronald Massey testified that on the evening of the incident he was watching television at his house when he heard two gunshots. He looked out of his window and saw a man running around the corner. Massey called 9-1-1. He went outside and saw a body lying on the ground. He approached the body along with a few other people and recognized the victim as someone he knew as Nicky. A few minutes later Petitioner came out from his grandmother's house across the street. Petitioner was holding a rifle. Petitioner said, "I didn't mean to do it. It was a mistake and they want

to take me to jail." (*Id.* at PgID 136.) Petitioner then returned to his grandmother's house.

Constance Brown testified she is Petitioner's 97-year-old great-grandmother. She lived in the house across the street from Petitioner and his mother. On the evening of the incident, Petitioner came over and told Ms. Brown he though Nicky was dead because someone put a white shirt over her head and an ambulance and police cars were arriving. Ms. Brown allowed police officers into her house where they arrested Petitioner.

Based on this evidence, Petitioner was bound over for trial on charges of first-degree murder, possession of a firearm by a felon, commission of a felony with a firearm, and assault with intent to commit murder.

Prior to trial, defense counsel moved to suppress Petitioner's statement to police. The interrogating detective testified Petitioner was arrested at about 10:00 p.m. on the night of the shooting, but he waited until about 3:00 p.m. the next day for Petitioner to be sober enough to question. Petitioner indicated prior to the interview he needed glasses to read, but according to the detective Petitioner was nevertheless able to read the notice of rights form by holding it close to his face. Petitioner, on the other hand, testified he was still intoxicated when he was interviewed, and he claimed that he was unable to read the notice of rights form. The Court reviewed the video recording of the interrogation and found Petitioner

voluntarily waived his rights and that he was not intoxicated when he made his statement. (ECF No. 10-3, PgID 223–27.)

On the morning scheduled for trial, at a break in the proceedings during jury selection, Petitioner accepted a plea bargain. Petitioner's counsel stated on the record that he had explained Petitioner his constitutional rights and informed him of what would occur if he accepted the plea deal. After their discussion, Petitioner informed counsel he wished to take the deal.

Defense counsel stated the agreement called for Petitioner to plead guilty to the lesser charge of second-degree murder and commission of a felony with a firearm. In exchange, the other counts would be dismissed, and the prosecutor agreed to a sentence of 19-60 years for the murder conviction plus the 5 years for the firearm conviction. The prosecutor also agreed to dismiss the habitual felony offender notice. (ECF No. 10-4, PgID 238–39.)

Petitioner was placed under oath. He indicated his satisfaction with his counsel, and he affirmed his belief his attorney was acting in his best interest. The court reiterated the terms of the plea agreement outlined by defense counsel, and Petitioner agreed it was also his understanding of the agreement. The court informed Petitioner of the maximum life sentence that was authorized for the murder conviction. (*Id.* at PgID 240–41.)

Petitioner acknowledged he received a written copy of the plea agreement, and he affirmed his signature appeared on the document. Petitioner agreed he had an adequate opportunity to read the document, his attorney explained it to him, and he understood it. Petitioner then indicated his desire to enter his guilty plea. (*Id.* at PgID 241.)

The court explained to Petitioner all of the rights he would be waiving by entering his plea, including: the right to a jury or bench trial, the presumption of innocence, the right to have the prosecutor prove him guilty beyond a reasonable doubt, the right to confront witnesses, the right to the assistance of counsel, the right to compel the production of defense witnesses, the right to remain silent, the right to testify, and the right to an automatic appeal by right. Petitioner indicated his understanding of these rights and that he would be giving them up by pleading guilty. (*Id.* at PgID 241–43.)

Petitioner denied anyone threatened him, coerced him, or promised him anything to get him to plead guilty. Petitioner indicated it was his own choice to plead guilty. Petitioner acknowledged he would not be allowed to come back later and claim it was not his own choice to plead guilty. Petitioner affirmed he was entering the plea knowingly, intelligently, understandingly, and accurately. (*Id.* at PgID 243–44.)

Petitioner then testified to a factual basis for the plea. He agreed he fired a rifle at the victim, and when he did so he either intended to kill, intended great bodily harm, or knowingly created a very high risk of death or great bodily harm. Petitioner denied the killing was justified. (*Id.* at PgID 244–45.)

The court found that Petitioner's guilty plea was knowingly, intelligently, voluntarily, understandingly, and accurately entered. (*Id.* at PgID 245–47.)

Following sentencing, Petitioner was appointed appellate counsel who filed a motion to withdraw the plea. Petitioner asserted he was not notified his guilty plea would waive his claim regarding the voluntariness of his statement to police, and he felt coerced to plead guilty when his counsel would not ask the prospective jurors questions he requested. The trial court denied the motion because Petitioner failed to reveal these allegations during the plea colloquy. (ECF No. 10-5, PgID 274–79.)

Petitioner's appellate counsel thereafter filed a delayed application for leave to appeal in the Michigan Court of Appeals that raised one claim:

> I. Does due process requires plea withdrawal where Appellant did not know his guilty plea waived his right to appeal the denial of the pre-trial motion to suppress Appellant's statement to a detective; and where Appellant was frightened into pleading guilty by defense trial counsel's failure to ask the questions Appellant wanted put to the potential jurors during selection, and Appellant felt defense trial counsel had lost interest in the case?

(ECF No. 10-9, PgID 345.)

6

Petitioner also filed a pro se supplemental brief that raised one additional claim:

> II. Does due process require plea withdrawal where trial counsel's failure to inform the trial court that the Defendant-Appellant had inform counsel that the confession he made to Detective Johnell White was completely false; trial counsel's failure to inform Defendant-Appellant of lesser related offenses in regard to the original charges; trial counsel's failure to follow through with the trial court decision following Defendant motion to find out the true identity of the prosecution witness Lorenzo Pettus; trial counsel's failure to inform Defendant-Appellant that his guilty plea would waive his right to appeal the denial of the pre-trial motion to a polygraph exam; trial counsel's use of coercion where Defendant-Appellant expressed reluctance during plea proceeding. All the above should constitute ineffective assistance of counsel.

(ECF No. 10-9, PgID 330.)

The Michigan Court of Appeals denied the delayed application "for lack of merit in the grounds presented." *People v. Carter*, No. 333402 (Mich. Ct. App. Sept. 6, 2016). Petitioner appealed, but the Michigan Supreme Court denied his application for leave to appeal by form order. *People v. Carter*, 891 N.W.2d 491 (Mich. 2017) (Table).

Petitioner returned to the trial court and filed a motion for relief from judgment that raised the following claims:

> I. Does due process require relief from judgment where a defendant makes a claim of actual innocence. This defendant claims his innocence, and intends to support this claim by the record, which constitutes a potential basis for withdrawal of a guilty plea. This defendant also intends to present compelling evidence of actual innocence to the specific charges that the defendant plead guilty to.

II. Does due process require relief from judgment where trial counsel displayed ineffective assistance from a collection of actions which were:

> A. The failure to notify the trial court of the false statement/confession that the defendant made to a police detective.
>
> B. The failure to show the defendant the video of the interrogation where the defendant made the false statement/confession.
>
> C. The failure to investigate the overall facts of the defendant's case, which lead to the defendant not having any possible defense strategies.
>
> D. The failure to file a motion for an expert witness, which would have help to explain the reasons why individuals give false confessions.
>
> E. The failure to interview any potential witnesses that the defendant requested, which sabotage the defendant's charges to explain his side of the ordeal at a trial.
>
> F. The failure to inform the defendant of any lesser related offenses that a potential jury would have been instructed on, had the defendant chose to gone ahead to trial.
>
> G. Trial counsel persuaded the defendant to plead guilty by the use of strong coercion, and the lack of preparing any defense to present at a trial. Trial counsel constant mentioning of the defendant receiving a life sentence frighten defendant into pleading guilty to charges the defendant isn't guilty of.

III. Does due process require relief from judgment due to prosecutorial misconduct, where the defendant was charged with murder when the elements for that specific charge weren't present at all. If prosecution

would have done a proper investigation of the facts of the case the defendant would have been charged with a lesser related offense.

IV. Does due process require relief from judgment due to ineffective assistance, where substitute appellate counsel refused to submit a new brief on the defendant's behalf. Instead the counsel chose to allow the brief that the previous counsel submitted to stand. Substitute appellate counsel never done any work in this case whatsoever, which the record will reflect.

(ECF No. 10-6, PgID 287.)

The trial court denied the motion, finding that review of Petitioner's new claims was barred under Michigan Court Rule 6.508(D)(3), and also because the claims lacked merit. (ECF No. 10-7, PgID 310–18.)

Petitioner then filed an application for leave to appeal in the Michigan Court of Appeals. The court denied the application for leave to appeal "because has failed to establish that the trial court erred in denying the motion for relief from judgment." *People v. Carter*, No. 343389 (Mich. Ct. App. May 31, 2018). Petitioner's subsequent application for leave to appeal in the Michigan Supreme Court was denied by form order. *People v. Carter*, 920 N.W.2d 117 (Mich. 2018) (Table).

## II. Standard of Review

28 U.S.C. § 2254(d) curtails federal habeas review of state convictions for claims adjudicated on the merits by state courts. A habeas petitioner must generally demonstrate that the state court adjudication was "contrary to" or "involved an unreasonable application of" clearly established Supreme Court law. *Id.* A decision

is "contrary to" clearly established Supreme Court law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.

Under this standard, a federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

### III. Analysis

A. Voluntariness of Plea

The Court starts with Petitioner's fifth habeas claim, asserting that his plea was involuntary, because, when a criminal defendant is convicted pursuant to a guilty plea, review of his conviction is limited to whether the plea was made knowingly, intelligently, and voluntarily. *United States v. Broce*, 488 U.S. 563, 569 (1989); *Boykin v. Alabama*, 395 U.S. 238 (1969).

A guilty plea is voluntary if it is not induced by threats, bribes, or misrepresentations, and the defendant is made aware of the likely consequences of the plea. *Brady v. United States*, 397 U.S. 742, 755 (1970)). The plea is intelligent and knowing where there is nothing to indicate that the defendant is incompetent or otherwise not in control of his or her mental faculties, is aware of the nature of the charges, and is advised by competent counsel. *Id.* at 756.

When a habeas petitioner challenges his guilty plea, the state generally satisfies its burden by producing a transcript of the state court proceedings showing that the plea was made voluntarily. *See Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993). "On habeas review, a state court's finding that a plea was valid is a factual finding that is entitled to a presumption of correctness." *Railey v. Webb*, 540 F.3d 393, 418 (6th Cir. 2008).

The state court record reveals that Petitioner's plea was knowing, intelligent, and voluntary. Petitioner offers no evidence that he suffered from any physical or mental problems impairing his ability to understand the criminal proceedings or his plea. Petitioner was represented by counsel, and Petitioner indicated during the plea proceeding that he had ample time to confer with his counsel prior to the plea proceeding. Petitioner was well aware of the alternative to pleading guilty, as the plea proceeding occurred on the first morning of trial.

During the plea hearing Petitioner was advised of all the trial rights he was waiving, along with the fact he was waiving his right to an "automatic" appeal of right. The parties discussed the charges, the terms of the plea agreement, and the direct consequences of the plea – including the exact sentence that was eventually imposed. Petitioner indicated that he understood the plea agreement, understood the rights he was waiving, and confirmed that he nevertheless wanted to plead guilty. He acknowledged that he had not been threatened or promised anything other than what was placed on the record. He testified to a factual basis for the plea, which included an admission to possessing the *mens rea* for murder when he shot the victim. Petitioner is bound by the statements that he made at the plea hearing, and his allegations cannot be given precedence over his on-the-record sworn statements to the contrary. *See Ramos v. Rogers*, 170 F.3d 560, 566 (6th Cir. 1999).

Petitioner asserts that he was not specifically informed during the plea colloquy that his guilty plea would waive his ability to claim on appeal that his statement to police was involuntary. Clearly established Supreme Court law requires a court to inform a defendant of all the relevant circumstances and likely consequences of a guilty plea. *Brady*, 397 U.S. at 748. But a defendant need not be informed of every collateral consequences of his plea, and the failure to inform a defendant of collateral consequences does not render a plea involuntary. *See Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (finding plea voluntary despite failure to inform

regarding collateral consequence of parole eligibility); *King v. Dutton*, 17 F.3d 151, 153 (6th Cir. 1994). The Sixth Circuit has said that matters which "are beyond the control or responsibility of the [trial court] are collateral consequences of a conviction or plea." *United States v. Cottle*, 355 F. App'x 18, 20 (6th Cir. 2009). Thus, the failure to specifically inform a defendant that claims of antecedent error might not be reviewed by an appellate court does not render a guilty plea invalid. *See Blount v. McCullick*, 2017 WL 3017497, at *6 (E.D. Mich. July 17, 2017) (citing *United States v. Adigun*, 703 F.3d 1014, 1020 (7th Cir. 2012) and *Upton v. Hoyt*, 43 F. App'x 34, 35 (9th Cir. 2002)).

Petitioner also claims that he felt pressured to plead guilty because his counsel would not ask the questions he requested of prospective jurors during jury selection, his counsel warned him of a possible life sentence if convicted at trial, and his counsel told him to think of the victim's family. If Petitioner felt pressured by these statements to enter his guilty plea, he was required to say so on the record during the plea hearing when asked. Petitioner's indication on the record that he was entering his plea of his own free will forecloses these types of claims. *Ramos*, 170 F.3d at 566.

Accordingly, the court finds that Petitioner has not overcome the presumption of correctness attaching to the trial court's finding that Petitioner entered his guilty plea knowingly, intelligently, and voluntarily.

B. Actual Innocence

Petitioner's first claim asserts that he is actually innocent. He proffered no evidence to the state courts to support this claim, nor does he present any here. Rather, he simply claims there is no evidence that he possessed the *mens rea* for murder. When he entered his voluntary guilty plea, however, Petitioner waived his right to a trial where the prosecution would have had the burden of proving his guilt beyond a reasonable doubt. *See Fautenberry v. Mitchell*, 515 F.3d 614, 636–37 (6th Cir. 2008) (citing *Boykin*, 395 U.S. at 243). A defendant who pleads guilty waives all pre-plea issues, *Tollett v. Henderson*, 411 U.S. 258, 267 (1973), including any claim that he had a defense to the charges. *Bowman v. Haas*, 2017 WL 3913016, at *4 (E.D. Mich. Sept. 7, 2017) (citing *Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992) and *Siegel v. New York*, 691 F.2d 620, 626 n. 6 (2d Cir. 1981)). A defendant "is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case." *Brady*, 397 U.S. at 757. Petitioner therefore waived his right to present a that he lacked the *mens rea* for murder. *Cf. Tollett*, 411 U.S. at 267.

C. Prosecutorial Misconduct

Petitioner's second claim asserts that the prosecutor committed misconduct by overcharging him and by failing to disclose that Lorenzo Pettus testified under a false name. These claims were likewise waived by Petitioner's voluntary guilty plea.

*See United States v. Ayantayo*, 20 F. App'x. 486, 487–88 (6th Cir. 2001) (A plea of guilty waives a defendant's right to claim pre-plea claims of prosecutorial misconduct).

D. Ineffective Assistance of Trial Counsel

Petitioner's third claim asserts that he was denied the effective assistance of counsel when his trial attorney: (1) failed to inform the trial court that Petitioner's confession was false, (2) failed to show Petitioner a copy of the video of his interrogation with functioning audio, (3) failed to inform Petitioner of the possibility of being convicted of lesser charges, (4) failed to investigate the alleged true identity of Lorenzo Pettus and impeach his credibility on that basis, (5) failed to interview his mother as a possible defense witness, (6) failed to inform Petitioner of the possibility of using an expert witness related to false confessions, (7) failed to investigate the facts of the case to determine the basis for a trial defense, and (8) coerced Petitioner into pleading guilty.

To the extent these claims amount to assertions of antecedent error that do not implicate the voluntariness of the plea, they were waived when Petitioner pled guilty. *See United States v. Stiger*, 20 F. App'x 307, 309 (6th Cir. 2001); *Siebert v. Jackson*, 205 F. Supp. 2d 727, 733–34 (E.D. Mich. 2002).

To the extent the claimed acts of ineffectiveness speak to the voluntariness of the plea, Petitioner must show both deficient performance and prejudice. *Premo v.*

*Moore*, 562 U.S. 115, 120–22 (2011). As to the first prong, Petitioner must establish that "counsel's representation fell below an objective standard of reasonableness." *Hill v. Lockhart*, 474 U.S. 52, 57–58 (1985). As to the second prong, Petitioner must show "that there is a reasonable probability that, but for counsel's errors, [defendant] would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59.

Petitioner demonstrates neither prong. Contrary to his allegations, Petitioner's trial counsel did challenge the voluntariness of his statement to police. Even if it is true that counsel did not show Petitioner a recording of his statement with audio, Petitioner was present during the suppression hearing where the officer taking the statement testified, he himself testified, and the trial court reviewed the video of his statement. With respect to the other allegations, Petitioner offered no evidence to the state courts, and he offers none here, that he was not informed of possible lesser offenses, that his counsel was unaware of Pettus' legal name, that his counsel was unaware of Petitioner's mother as a possible defense witness, or that he failed to consider using an expert witness on false confessions. Pointedly, Petitioner does not present an affidavit from his mother. He does not present an affidavit from a confession expert. And he doesn't offer evidence that Pettus used a false name. "It should go without saying that the absence of evidence cannot overcome the 'strong presumption that counsel's conduct [fell] within the wide range of reasonable

16

professional assistance.'" *Burt v. Titlow*, 571 U.S. 12, 23 (2013) (citing *Strickland v. Washington*, 466 U.S. 668, 689 (1984)).

Furthermore, Petitioner fails to show that he was prejudiced by his counsel's conduct, i.e., that but for counsel's advice, he would have rejected the plea agreement and insisted on going to trial. *Lockhart*, 474 U.S. at 59. The evidence of Petitioner's guilt was extremely strong. One eyewitness saw him shoot the victim. Another eyewitness who heard the shots saw Petitioner holding a rifle and heard him make a statement admitting that he shot the victim. Finally, Petitioner admitted to police the next day that he shot the victim. In light of the strong evidence of his guilt and the lack of any viable defense, Petitioner has not shown a reasonable probability he would have elected to take his chances at trial. *See, e.g.*, *West v. Berghuis*, 716 F. App'x 493, 497 (6th Cir. 2017).

E. Ineffective Assistance of Appellate Counsel

Petitioner asserts that his appellate counsel failed to raise meritorious claims on direct appeal. The Court has already determined that the claims not raised on direct review by appellate counsel are without merit. "Appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit." *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001); *see also Mahdi v. Bagley*, 522 F.3d 631, 638 (6th Cir. 2008) ("No prejudice flows from the failure to raise a meritless claim.").

Because none of Petitioner's claim merit habeas relief, the petition is denied.

17

## IV. Certificate of Appealability

In order to appeal the Court's decision, Petitioner must obtain a certificate of appealability. 28 U.S.C. § 2253(c)(2). The applicant is required to show that reasonable jurists could debate whether the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). A federal district court may grant or deny a certificate of appealability when the court issues a ruling on the habeas petition. *Castro v. United States*, 310 F.3d 900, 901 (6th Cir. 2002). Here, jurists of reason would not debate the Court's conclusion that Petitioner has failed to demonstrate entitlement to habeas relief because all of his claims are devoid of merit.

Finally, Petitioner is denied permission to appeal in forma pauperis because any appeal would be frivolous. 28 U.S.C. § 1915(a)(3).

## V. Conclusion

Accordingly, the Court 1) DENIES WITH PREJUDICE the petition for a writ of habeas corpus, 2) DENIES a certificate of appealability, and 3) DENIES permission to appeal in forma pauperis.

IT IS SO ORDERED.

                                                        s/Paul D. Borman
                                                        Paul D. Borman
                                                        United States District Judge

Dated: August 26, 2020